15708

STATE v. WILLIAMS

(32 S. E. (2d), 887)

*Mr. W. D. Jennerette,* of Mullins, S. C., submitted argument for Appellant.

*Mr. J. Reuben Long,* Solicitor, of Conway, S. C., appears of record as Counsel for The State.

February 2, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

DeWitt Williams, Ellis Alford and J. F. Alford were charged in an indictment with unlawfully having in possession, storing and transporting alcoholic liquors which did not have South Carolina revenue stamps affixed to the container thereof, and with unlawfully manufacturing alcoholic liquors without a license. They were found guilty by a jury as charged. A motion for a directed verdict as to all three defendants was made and refused by the trial Judge. The defendant DeWitt Williams alone has appealed. The principal question for determination is whether the evidence as to him was sufficient to require the trial Judge to submit the case to the jury.

The testimony offered by the State was substantially as follows: About noon, on Sunday, July 26, 1943, a deputy sheriff of Horry County, along with two other officers, went in a car to the Pee Dee River which was at overflow stage. Before reaching the river, they noticed that an automobile or truck had preceded them. They followed the trail of this vehicle down a path, across

woods and grass, to a point where it could go no farther on account of high water. There they found parked a pick-up truck, which they recognized as belonging to appellant, with three suits of clothes in it. At this point they parked their automobile and on foot followed some fresh tracks which led from the truck down a path to the edge of the water. They waded into this overflow and before getting to the river heard some one coming. They stopped and the defendant J. F. Alford came up to them in a boat. The officers inquired of him where his partners were, to which he replied that he was alone. He claimed that he was fishing, but the officers saw no fishing tackle or fish. He then stated that he could show them tracks on the river bank where he had been fishing. All went back to the river bank and being unable to find any such tracks, came back to the point near where they had left. About this time, while standing in water up to their waists, the officers heard some one whistle. This person could not be seen on account of the growth in the swamp, but appeared to be moving in water about 50 yards away. The officers requested J. F. Alford to answer the whistle. He said he was unable to whistle. The officers then told him to call the party and tell him to come out. Alford called and in response two persons waded toward them and when a short distance away were recognized as the other two defendants, Ellis Alford and DeWitt Williams. These two men had a jug partially filled with water, a frying pan, a sack which had contained groceries, and a few ears of corn. Appellant stated that he had been in the swamp for two or three days and walked to get there. The officers stated that the water was still at this point and the passage made by the two men in coming to them was clearly visible, and could be easily followed. After a brief conversation with these two defendants, the officers, following the "suds" (wake) made by appellant and Ellis Alford, waded a distance of 50 or 75 yards to the bank. When they reached the

bank they found on the edge of the water, beside a tree, a keg containing 10 gallons of liquor.

Around this keg of liquor were fresh tracks. It had rained the night before, the soil was sandy and wet, and these tracks could be easily followed. There were two sets of tracks leading directly from the keg of liquor to the water at the point where the officers reached the bank. There were also three sets of fresh tracks, from their size evidently made by men, leading from another direction to the place where the liquor was found. The officers followed the last-mentioned tracks a distance of approximately 300 yards, where they found a 200-gallon still and two boxes containing 600 gallons of mash. The still had just recently been in operation and was hot and smoking. It further appeared that nearby there had been some recent cooking and the coals were still warm. This still and keg of liquor were located on an island. The testimony is not clear as to whether this was a natural island or a temporary one created by the overflow, but this is immaterial. They carried J. F. Alford with them on this trip to the still, but left the other defendants where they had talked to them. The still was demolished. Afer its destruction, the officers, along with defendant J. F. Alford, returned to the place where they left the other defendants and found that they had gone. The officers then returned to the place where the car and truck were parked and took the truck with the clothes in it to Conway. They left the river about 2 o'clock that afternoon. Appellant some time later called for the truck and the clothes were claimed by him and the other two defendants. The officers testified that they saw no one else in the vicinity where the liquor and still were found and saw no tracks other than those herein described.

The appellant testified that he and the other two defendants went in this truck to the river about 7 o'clock that morning for the purpose of fishing, but he and Ellis Alford

were also "going hog hunting and to look for some cows." He stated that they caught no fish, declined to tell what kind of fishing he was doing, stating that he "would rather not tell that, it might incriminate myself otherwise." He denied having any connection with the still or liquor. He admitted having the sack, frying pan and bread and stated that these were carried along for the purpose of having a fish fry if they were able to catch any fish. He also admitted being the one who whistled, but stated that this was done in order to locate J. F. Alford from whom they had become separated. Upon being asked why he told the officers that he had been in the swamp two or three days, appellant testified that he was just joking.

We think the foregoing testimony fully warranted the trial Judge in refusing the motion of appellant for a directed verdict and in submitting the case to the jury. Reference to other cases decided by this Court would serve no useful purpose. As stated in *State v. Atkins et al.,* 192 S. C., 110, 5 S. E. (2d), 576, 577, "each case must be decided on its own peculiar facts and surrounding circumstances."

The only other question raised by the exceptions is the contention that the Court erred in permitting the solicitor to cross examine the appellant at length about the process of manufacturing whiskey. Appellant contends that this cross examination was irrelevant and highly prejudicial. Shortly after the solicitor began his cross examination of appellant, the following occurred:

"Q. You know how to still? A. Well, I have done it.

"Q. You are a pretty good one, too, aren't you?

"Mr. Epps: Your Honor, we think that is infringing upon the rule. We take exception to it.

"The Court: Yes, sir.

"Solicitor Long: Your Honor, I didn't ask him what he done before, I just asked him did he know how to still?

"The Court: Well, don't go any further with that."

After the Court made the foregoing ruling appellant was examined without objection at some length as to the process used in distilling liquor, but he was not questioned as to whether he had ever done any distilling. It is not entirely clear whether the Court by its ruling intended to exclude any testimony relating to appellant's experience in operating a still, or to exclude any further testimony relating to appellant's general knowledge of distilling. In view of the fact that there was no further objection by appellant's counsel and no further interruption by the Court, all must have understood that the Court's ruling related to the exclusion of any testimony as to manufacturing by appellant. Otherwise, it is not reasonable to suppose that appellant's counsel would have remained silent. He apparently was satisfied with the disposition which the Court made of the matter. Under these circumstances, if appellant's counsel regarded the further cross examination as a violation of the ruling which the Court had made, we think it was his duty to have called the Court's attention to that fact. It is, therefore, unnecessary for us to pass upon the question of the relevancy of this testimony if timely objection had been made.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.